EDWARD M. ROBBINS, JR., ESQ. (SBN 82696)
Hochman, Salkin, Rettig, Toscher & Perez, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212
Phone: (310) 281-3200
Facsimile: (310) 859-5129
E-Mail: EdR@taxlitigator.com

Attorneys for Defendants, August Bohanec and Maria Bohanec

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>AUGUST BOHANEC and MARIA BOHANEC,<br><br>　　　　　Defendants. | CASE NO. 2:15-CV-4347<br><br>DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW |

**I. Synopsis of the claim**

　　The Government seeks to reduce an FBAR penalty to judgment. The FBAR penalty is imposed on United States citizens who fail to report certain transactions with foreign financial agencies as required by 31 U.S.C. § 5314. Under the implementing regulations of § 5314, "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year such relationship exists." 31 C.F.R. § 1010.350(a). This is done through filing a Report on Foreign Bank and Financial Accounts, also known as an FBAR, by June 30 of the year following the year being reported. Since the year being reported is 2007, the Bohanecs had to file an FBAR by June 30, 2008.

For willful violations of the reporting requirements, Congress—through 31 U.S.C. § 5321(a)(5)(C)(i)—authorized a maximum penalty of the greater of (1) $100,000 or (2) 50% of the balance of the account at the time of the violation.[1] The Government may sue to recover the penalty assessed under 31 U.S.C. § 5321(a) before the end of the 2-year period beginning on the date the penalty was assessed.

The parties agree that August Bohanec and Maria Bohanec maintained a foreign financial account in 2007 and that the balance of their interests in the foreign financial accounts was at least $643,662. The Government contends that August Bohanec and Maria Bohanec willfully failed to report their interest in their foreign accounts for 2007 and the Internal Revenue Service assessed an FBAR penalty against August Bohanec on June 10, 2013, in the amount of $160,915.75 and against Maria Bohanec on June 10, 2014 in the same amount. The assessments against both Bohanecs total 50% of the amount in their foreign bank account.

**II. Single Issue for Trial**

While both Bohanecs admit that they had a foreign financial account, they each deny that they willfully violated 31 U.S.C. § 5314. The Bohanecs never heard of an FBAR when the Bohanecs had to file an FBAR (by June 30, 2008).

In March 2009, the IRS initiated the "2009 Offshore Voluntary Disclosure Program," intended to "get those taxpayers hiding assets offshore back into the system." See http://www.irs.gov/uac/Statement-from-IRS-Commissioner-Doug-Shulman-on-Offshore-Income. On May 6, 2009, the IRS posted on its website Frequently Asked Questions ("FAQs") explaining the program to taxpayers in plain language. Several of the FAQs addressed FBAR issues, and one purported to extend the FBAR filing deadline:

---

[1] Before 2004, the statute used to provide for a smaller maximum penalty for willful violations: the greater of either the balance in the account at the time of the violation (not to exceed $100,000) or $25,000. See 31 U.S.C. § 5321 (2003). Congress amended this statute, however, in the American Jobs Creation Act of 2004, increasing the maximum penalty to its current level. See P.L. 108-357, 118 Stat. 1421.

Q9. I have properly reported all my taxable income but I only recently learned that I should have been filing FBARs in prior years to report my personal foreign bank account or to report the fact that I have signature authority over bank accounts owned by my employer. May I come forward under the voluntary disclosure practice to correct this?

A9. The purpose for the voluntary disclosure practice is to provide a way for taxpayers who did not report taxable income in the past to voluntarily come forward and resolve their tax matters. Thus, If [sic] you reported and paid tax on all taxable income but did not file FBARs, do not use the voluntary disclosure process.

For taxpayers who reported and paid tax on all their taxable income for prior years but did not file FBARs, you should file the delinquent FBAR reports according to the instructions ... and attach a statement explaining why the reports are filed late. Send copies of the delinquent FBARs, together with copies of tax returns for all relevant years, by September 23, 2009, to the Philadelphia Offshore Identification Unit. ...

The IRS will not impose a penalty for the failure to file the FBARs.

The reasonable approach taken by the IRS in connection with unfiled FBAR was practical. Before the IRS launched its 2009 Offshore Voluntary Disclosure Program with all of its attendant publicity few people apart from tax professionals (and even most of them) never heard of an FBAR. The Bohanecs never heard of an FBAR in 2008. Maria Bohanec, age 65 on June 30, 2008, was a naturalized United States citizen originally from Mexico. Ms. Bohanec's highest level of education was sixth grade in a Mexican grade

3

school. Maria Bohanec never heard of an FBAR in 2008. August Bohanec, age 74 on June 30, 2008, was a naturalized United States citizen originally from Slovenia. Mr. Bohanec missed the last three years of public school in Slovenia due to WW II. Later he trained to be a tool-and-die maker in Slovenia. He came to the United States in 1961. August Bohanec never heard of an FBAR in 2008.

In the 1970's Maria and August Bohanec opened a camera shop in Pasadena, California. They closed the shop in the late 1980's, but continued to sell camera parts and to repair cameras for foreign customers through e-Bay. The Bohanecs deposited their receipts from the foreign sales into their foreign bank account and did not file FBAR's.

At all times relevant to this case, the Bohanecs did not file any federal income tax returns.

**III. Contentions of Law re Willfulness and the Burden of Proof**

To prove willfulness in either a civil or a criminal FBAR case, the Government must show through clear and convincing[2] evidence that the defendant committed a "voluntary, intentional violation of a known legal duty." See *United States v. Sturman*, 951 F.2d 1466, 1476(6th Cir. 1991); IRS Internal Reference Manual, I.R.M. 4.26.16.4.5.3 at ¶6 (July 1-2008); IRS CCA 200603026 (Jan. 20, 2006).

Relying on *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007), *United States v. Williams,* 489 Fed. Appx. 655 (4th Cir. 2012) and *McBride,* the Government attempts to broaden that willfulness definition by claiming it need only prove recklessness. It is wrong. All three cases cited still require a violation of a *known legal duty*. The three cases may dilute the *voluntary, intentional* component of willfulness, but they do not touch the *known legal duty* component. While both Bohanecs admit that they had at least one foreign financial account, they each deny that they willfully violated

---

[2] The Government's reliance on *United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah, 2012) for the proposition that its standard of proof is a preponderance of the evidence is erroneous, and McBride is wrong on this point.

4

31 U.S.C. § 5314. The Bohanecs did not know that the law required them to file an FBAR at the time the Bohanecs had to file an FBAR (by June 30, 2008), accordingly it was impossible for them to violate a known legal duty. Also, unlike the taxpayers in *Safeco Ins. Co., Williams,* and *McBride,* the Bohanecs did not lie on their Schedule B by denying that they had signature authority over a foreign bank account, nor did they ignore the warnings about FBAR provided by the IRS on the Schedule B. The Bohanecs had no Schedule B.

The Supreme Court has recognized that willful "is a word of many meanings, and its construction [is] often ... influenced by its context." *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994) (citations and quotation marks omitted). Moreover, "[a] term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. at 143. Congress has used the word "willful" in both the criminal and civil FBAR statutes. 31 U.S.C. §§ 5321, 5322. The same intent requirement applies for the civil FBAR penalty and criminal FBAR penalty. United States v. Sturman, 951 F.2d 1466, 1476 (6th Cir. 1991) (noting willfulness standard in criminal conviction for failure to file an FBAR). The IRS itself reached the same conclusion. IRS CCA 200603026 (Jan. 20, 2006), supra, ("[t]he same word, willful, is used in both of these sections. Statutory construction rules would suggest that the same word used in related sections should be consistently construed."). The context clarifies that "willful" means a voluntary intentional violation of a known legal duty and not any lesser standard. Here, there is plenty of evidence that the Bohanecs were not aware of the duty to file an FBAR at any relevant time.

*Williams* and *McBride* may suggest the standard is something other than that formerly admitted by the IRS CCA, supra, but their reasoning is flawed and useless dicta. Both courts found that the taxpayers knew the Section 5314 reporting requirement and willfully failed to file. *Williams*, 489 F. App'x at 659; *McBride*, 908 F. Supp. 2d 1186 at

1208-9. Any discussion of recklessness is unnecessary to the decision, and, by definition, dicta.

In concluding that recklessness is akin to willfulness in the civil FBAR context, *Williams* relies solely on *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007), which interpreted willfulness in the context of the Fair Credit Reporting Act and noted that "'willfully' is a word of many meanings whose construction is often dependent on the context in which it appears." Id. at 57. *McBride* similarly relies on inapposite case law.

In defining willfulness to include recklessness in the FBAR context, both cases are inconsistent with long-established precedent defining willfulness in tax and Bank Secrecy Act cases, and with the IRS position as expressed in the CCA and the Internal Revenue Manual. See, e.g., *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994) ("In this light, we count it significant that § 5322(a)'s omnibus "willfulness" requirement, when applied to other provisions in the same subchapter, consistently has been read by the Courts of Appeals to require both "knowledge of the reporting requirement" and a "specific intent to commit the crime," i.e., "a purpose to disobey the law." (citing *United States v. Bank of New England, N.A.*, 821 F.2d 844, 854–859 (1st Cir. 1987) ("willful violation" of § 5313's reporting requirement for cash transactions over $10,000 requires "voluntary, intentional, and bad purpose to disobey the law"); *United States v. Eisenstein*, 731 F.2d 1540, 1543 (11th Cir. 1984) ("willful violation" of § 5313's reporting requirement for cash transactions over $10,000 requires " 'proof of the defendant's knowledge of the reporting requirement and his specific intent to commit the crime.' " (quoting *United States v. Granda*, 565 F.2d 922, 926 (5th Cir. 1978))); I.R.M. 4.26.16.4.5.3 at ¶6 (July 1, 2008); IRS CCA 200603026 (Jan. 20, 2006).

///
///
///
///

6

## IV. Conclusion

The Government has not, and cannot, prove that the Bohanecs acted willfully. This complaint and action should be dismissed.

Respectfully submitted,

Hochman, Salkin, Rettig, Toscher & Perez, P.C.

By: /s/ Edward M. Robbins, Jr.
Attorneys for Defendants,
August Bohanec and Maria Bohanec